OPINION
{¶ 1} Appellant, Dwayne M. Bentley, appeals from the February 18, 2004 judgment entry of the Ashtabula County Court of Common Pleas, Juvenile Division, granting permanent custody of Casondra Bentley ("Casondra") and Bridgette Bentley ("Bridgette") to appellee, Ashtabula County Children Services Board.
 {¶ 2} On October 19, 2001, appellee obtained emergency temporary custody of Casondra, d.o.b. October 14, 1991, and Bridgette, d.o.b. January 20, 1993. On October 22, 2001, appellee filed a complaint, alleging that Casondra appeared to be an abused child pursuant to R.C.2151.031(A), that Casondra and Bridgette were abused children based on R.C. 2151.031(C), and that both were neglected children as defined in R.C. 2151.03(A)(6). An emergency shelter care hearing was held on October 22, 2001. The trial court found probable cause regarding the necessity for the removal or continued removal of Casondra and Bridgette from the home of their father, appellant, and mother, Marian Spencer ("Marian"). Also, on October 22, 2001, Jane L. Lesko ("GAL") was appointed as Casondra's and Bridgette's guardian ad litem.
 {¶ 3} A case plan was filed on November 8, 2001. A pretrial was held on November 19, 2001. On January 17, 2002, an adjudicatory, dispositional, and evidentiary hearing commenced, in which the trial court found abuse and neglect with respect to Casondra and determined that Bridgette was dependent. The November 8, 2001 case plan was adopted by the trial court, and Casondra and Bridgette were maintained in the temporary custody of appellee.
 {¶ 4} A second case plan was filed on March 21, 2002. On April 22, 2002, a hearing was held. The trial court continued the case plan, and Casondra and Bridgette were to remain in the temporary custody of appellee.
 {¶ 5} A third case plan was filed on August 29, 2002. On September 20, 2002, appellee filed a motion requesting modification of temporary custody to permanent custody. A dispositional hearing commenced on October 22, 2002, in which the trial court extended temporary custody to appellee.
 {¶ 6} On January 21, 2003, the GAL filed her report in which she recommended that appellee be granted permanent custody of Casondra and Bridgette, and a permanent custody hearing was held. At that hearing, the trial court noted that appellant failed to appear. A stipulation to the termination of parental rights was taken from Marian. The parties agreed to delay the best interest portion of the hearing to a later date.
 {¶ 7} Holly Ogden ("Ogden"), an intake/compliance/caseworker with appellee, testified that she was referred to the instant case and conducted interviews with Casondra and Bridgette in October of 2001. According to Ogden, a school nurse noticed a fist print on the back of Casondra and markings on Bridgette's face. Ogden stated that Casondra and Bridgette were removed on October 19, 2001. Ogden indicated that appellant failed to comply with any aspects of the November 2001 case plan.
 {¶ 8} On January 27, 2003, a fourth case plan was filed. A fifth case plan was filed on June 20, 2003. The GAL filed an amended report in which she recommended that it would be in the best interests of Casondra and Bridgette to be in the permanent custody of appellee. The best interest portion of the permanent custody hearing was held on July 21, 2003. At that hearing, Marian entered a stipulation that it would be in the best interests of Casondra and Bridgette to be placed in the permanent custody of appellee so they can be adopted. Appellant, who was incarcerated, attended the hearing and did not agree to anything regarding Casondra and Bridgette.[1]
 {¶ 9} Marian filed a motion to withdraw her stipulation to permanent custody on August 28, 2003. Also, on August 28, 2003, the best interest portion of the permanent custody proceeding pertaining to appellant was held. At that hearing, Patty Jackson ("Jackson"), a family caseworker with appellee, testified that she had been involved with the instant case since December 2, 2002. Jackson stated that appellee had not received any contact from appellant. Jackson indicated that Casondra was unable to be maintained in a foster home because of suicidal behaviors and sexual acting out and, thus, was in a residential treatment setting, Bellefaire Jewish Children's Bureau in Shaker Heights, Ohio. Jackson said that Bridgette had been placed with a maternal uncle, Robert Spencer ("Robert"). According to Jackson, the long term plans for Casondra and Bridgette would be to have Robert adopt them because both girls deserve permanency. Jackson further testified that she believed that Casondra and Bridgette were adoptable. Jackson indicated that Robert wanted to adopt both girls, had taken training through the Bair Foundation, and had completed foster care and adoption training as well as a psychological evaluation.
 {¶ 10} A hearing on Marian's motion to withdraw her stipulation to permanent custody was held on September 2, 2003. According to the September 2, 2003 magistrate's decision, appellee's motion requesting modification of temporary custody to permanent custody was granted. Appellant filed his objections on September 16, 2003. In its February 10, 2004 judgment entry, the trial court overruled appellant's objections and denied Marian's motion to withdraw her stipulation.
 {¶ 11} Pursuant to its February 18, 2004 judgment entry, the trial court adopted the September 2, 2003 magistrate's decision. The trial court granted appellee's motion requesting modification of temporary custody to permanent custody and ordered that appellant and Marian were divested of any and all parental rights, privileges, and obligations except the right to appeal.[2] It is from that entry that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 12} "[1.] The juvenile court erred in finding that reunification between the subject children and [appellant] could not occur.
 {¶ 13} "[2.] The juvenile court erred in finding that termination of parental rights was in the best interests of the subject children."
 {¶ 14} Before addressing the merits of this appeal, this court must consider a preliminary issue, namely: whether the trial court erred in adopting the magistrate's decision when the decision failed to discuss all five factors contained in R.C. 2151.414(D)(1) through (5).
 {¶ 15} We note that appellant raised this particular issue in his objections, which was overruled by the trial court.
 {¶ 16} Our standard of review is whether the trial court abused its discretion in adopting the magistrate's decision. In re Kelley, 11th Dist. No. 2002-A-0088, 2003-Ohio-194, at ¶ 8, citing Ravenna PoliceDept. v. Sicuro, 11th Dist. No. 2001-P-0037, 2002-Ohio-2119, at 3.
 {¶ 17} R.C. 2151.414 sets forth guidelines which a juvenile court must follow. Specifically, R.C. 2151.414(B)(1) establishes a two-pronged analysis and permits the juvenile court to grant permanent custody of the child to the agency if the court determines by clear and convincing evidence that it is in the best interest of the child to grant permanent custody to the agency and that any of the following apply:
 {¶ 18} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 19} "(b) The child is abandoned.
 {¶ 20} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 21} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 22} Here, pursuant to the magistrate's September 2, 2003 decision, which was adopted by the trial court on February 18, 2004, the magistrate indicated that "Casondra and Bridgette were removed from [Marian's and appellant's] custody on October 19, 2001 and have remained in the temporary custody of [appellee] ever since." R.C. 2151.414(B)(1)(d).
 {¶ 23} Next, the magistrate and the juvenile court proceeded to the second prong of the statutory analysis, to wit: the determination that it is in the best interests of the children to grant permanent custody to appellee. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates that the trial court must consider all relevant factors, including, but not limited to, the following:
 {¶ 24} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 25} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 26} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 27} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 28} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 29} We have consistently held that the provisions of R.C. 2151.414(D) are mandatory and "`must be scrupulously observed.'" Kelley, supra, at ¶ 24, quoting In re Hommes (Dec. 6, 1996), 11th Dist. No. 96-A-0017, 1996 Ohio App. LEXIS 5515, at 1. See, also, In re Litz, 11th Dist. No. 2001-G-2367, 2001-Ohio-8903, at 5; In re Ranker (Oct. 6, 2000), 11th Dist. No. 99-P-0072, 2000 Ohio App. LEXIS 4662, at 7; In re Jacobs (Aug. 25, 2000), 11th Dist. No. 99-G-2231, 2000 Ohio App. LEXIS 3859, at 5; Inre Ethington (July 23, 1999), 11th Dist. No. 98-T-0084, 1999 Ohio App. LEXIS 3419, at 3; In re Alexander (Dec. 19, 1997), 11th Dist. No. 96-T-5510, 1997 Ohio App. LEXIS 5742, at 2.
 {¶ 30} The failure to discuss each of the R.C. 2151.414(D) factors when reaching a determination concerning the best interest of the child constitutes prejudicial error. Kelley, supra, at ¶ 25, citing Jacobs,
supra, at 5. (Emphasis sic.) See, also, Litz, supra, at 5; In re Bailey
(July 20, 2001), 11th Dist. No. 2001-G-2340, 2001 Ohio App. LEXIS 3293, at 5; In re Congos (Nov. 9, 2000), 11th Dist. No. 2000-L-092, 2000 Ohio App. LEXIS 5251, at 1; Ranker, supra, at 7; Ethington, supra, at 2-3;Alexander, supra, at 2-3; Hommes, supra, at 2.
 {¶ 31} In the instant matter, the magistrate's decision listed the factors set forth in R.C. 2151.414(D)(1) through (5), and acknowledged that it was required to consider all of these factors. Both the magistrate's decision and the trial court's judgment entry stated that the factors contained in R.C. 2151.414(D) were considered, and that the best interests of the children would be served by granting of permanent custody to appellee. However, a thorough review of the magistrate's decision and the juvenile court's judgment entry clearly show that every statutory factor contained in R.C. 2151.414(D)(1)-(5) was not addressed and/or discussed.
 {¶ 32} The magistrate's decision reveals that R.C. 2151.414(D)(1) and (3) were considered and discussed.
 {¶ 33} Pursuant to R.C. 2151.414(D)(1), the magistrate stated that appellant has not visited with Casondra and Bridgette since they were removed from his custody in October 2001, due to his lack of cooperation with appellee and the no contact order. The magistrate indicated that Bridgette is currently placed with her maternal uncle, Robert, who also regularly visits with Casondra and participates in counseling with her. The magistrate stressed that Robert is interested in adopting both children. The magistrate said that Casondra and Bridgette continue to visit each other and have a good relationship.
 {¶ 34} With respect to R.C. 2151.414(D)(3), the magistrate's decision discusses the custodial history of Casondra and Bridgette, including their various placements since October 19, 2001.
 {¶ 35} The magistrate, however, failed to discuss the factors set forth in R.C. 2151.414(D)(2), (4), and (5).
 {¶ 36} Pursuant to R.C. 2151.414(D)(2), the magistrate stated in her decision that the GAL "recommends that it would be in [Casondra's and Bridgette's] best interest to be placed in the permanent custody of [appellee] because of the instability of both parents, the severe neglect that the girls have endured and the severe abuse perpetrated by [appellant.] [The GAL] recommends that the children be placed together in an adoptive setting." However, the magistrate failed to discuss the children's wishes, who were ten and eleven years old. See In re Meyer,
11th Dist. No. 2003-A-0064, 2003-Ohio-4605, at ¶ 26. Although the magistrate mentioned that Casondra and Bridgette would like to be placed together eventually, she failed to address their wishes regarding with whom they would like to be placed.
 {¶ 37} Based on R.C. 2151.414(D)(4), the magistrate's decision indicates that Casondra and Bridgette need a legally secure and permanent placement. However, the magistrate failed to clearly discuss the second portion of R.C. 2151.414(D)(4), as to whether that type of placement could be achieved without granting permanent custody to appellee. Kelley,
supra, at ¶ 32.
 {¶ 38} Also, pursuant to R.C. 2151.414(D)(5), the magistrate's decision fails to address whether any of the factors in R.C. 2151.414(E)(7) to (11) apply in relation to appellant and the children.
 {¶ 39} Thus, because the juvenile court's judgment entry discusses some, "but not all," of the factors listed in R.C. 2151.414(D), we must reverse. Kelley, supra, at ¶ 33, citing Hommes, supra, at 2. (Emphasis sic.) We hold that the trial court abused its discretion in adopting the magistrate's decision. It would be premature for this court to address the merits of appellant's appeal, which challenge the trial court's decision to adopt the magistrate's determination to grant permanent custody of the children to appellee. "`Until a proper judgment entry is filed, there is nothing for this court to review.'" Kelley, supra, at ¶ 34, quoting Congos, supra, at 1.
 {¶ 40} This matter is remanded to the juvenile court to clearly discuss in a judgment entry all of the factors set forth in R.C.2151.414(D)(1) through (5). Our decision, however, should not be construed to express any view as to whether appellee should have been granted permanent custody of the minor children.
 {¶ 41} The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is reversed, and the matter is remanded for further proceedings consistent with this opinion.
Christley, J., concurs.
Grendell, J., dissents with a Dissenting Opinion.
[1] Appellant was incarcerated for domestic violence against Casondra and Bridgette and for twelve counts of rape against Casondra.
[2] Marian's appeal, Case No. 2004-A-0023, was dismissed on May 28, 2004, for failure to prosecute.